UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
                                    )
CHRISTINE RALTON,                   )
                                    )
           Plaintiff,               )
                                    )
     v.                             )
                                    )
                                    )
COLLECTO, INC., d/b/a EOS-CCA,      )   Civil Action No. 14-13184-DJC
                                    )
           Defendant.               )
                                    )
_____ )

## MEMORANDUM AND ORDER

**CASPER, J.**                                                    February 27, 2015

### I.  Introduction

Plaintiff Christine Ralton ("Ralton") filed this lawsuit against Defendant Collecto, Inc., d/b/a EOS-CCA ("Collecto") alleging a violation of the McNamara O'Hara Service Contract Act ("SCA"), 41 U.S.C. §§ 6701 *et seq*. D. 4 ¶ 20. Ralton also alleges a "wage claim" for "[t]he failure of Collecto to pay Ralton the required prevailing wages" in violation of "Massachusetts State law." Id. ¶ 27. Collecto has moved to dismiss. D. 5. For the reasons stated below, the Court ALLOWS the motion.

### II. Standard of Review

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). The Court accepts "the truth of all well-pleaded facts and draw[s]

1

all reasonable inferences therefrom in the pleader's favor." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012). The Court must "determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (internal quotations and citations omitted). "[T]he plaintiff need not demonstrate [she] is likely to prevail" at this stage, only that her claims are "facially plausible." Id. at 102-3 (citations omitted). Although the Court's inquiry does not demand "a high degree of factual specificity," id. at 103 (internal quotation and citation omitted), the complaint "must contain more than a rote recital of the elements of a cause of action." Id. (quoting Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013)).

### III. Factual Background

Unless otherwise indicated, the following facts are as alleged in the complaint, D. 4, and are taken as true for the purposes of considering this motion.

In November 2004, the U.S. Department of Education ("DOE") awarded Collecto a federal student aid collection contract. D. 4 ¶ 3. The DOE awarded a second contract to Collecto in the summer of 2009. Id. ¶¶ 18, 19. In March 2005, Ralton began working at Collecto under the first contract as a "Loan Recovery Specialist." Id. ¶ 4. In July 2008, Ralton was transferred to a different department, and her job classification under the contract changed to "general clerk II." Id. ¶ 15. Ralton ended her position on the contract in March 2011, but continued working at Collecto in the Compliance Department. Id. ¶ 26.

The Department of Labor established prevailing wage rates and fringe benefits for debt collection services, as required by the SCA. Id. ¶¶ 6, 20. Collecto's contract with the DOE incorporated these wage determinations. Id. ¶ 24. In October 2009, Ralton discovered that from

March 2005 to October 2009, she was paid less than the prevailing wage and benefits for both of her job classifications under the contract. Id. ¶¶ 20, 23. Ralton's wages continued to fall short of the prevailing wage rate through March 2011. Id. ¶ 25.

## IV. Procedural History

Ralton instituted this action in Plymouth Superior Court on July 1, 2014. D. 4. Collecto removed this action to federal court, D. 1, and subsequently moved to dismiss, D. 5. The Court heard the parties on the pending motion and took this matter under advisement. D. 17.

## V. Discussion

### A. **Ralton Does Not Have a Private Right of Action under the SCA**

Ralton alleges a violation of the SCA, which "was approved by Congress to provide labor standards for the protection of employees of contractors furnishing services to or performing maintenance service for the United States Government." Sopeña v. Colejon Corp., 920 F. Supp. 259, 265 (D.P.R. 1996). With certain exceptions, the SCA "requires the inclusion of specific provisions establishing minimum wage and fringe benefit levels in every contract entered into by the United States." Miscellaneous Serv. Workers, Drivers & Helpers, Teamsters Local No. 427 v. Philco-Ford Corp., WDL Div., 661 F.2d 776, 778 (9th Cir. 1981). Collecto contends, however, that Ralton's SCA claim must be dismissed as a matter of law because "the SCA does not provide employees with a private right of action against their employers for the failure to pay prevailing wages." D. 6 at 1. While the First Circuit has not addressed this issue directly, the Court is persuaded by other courts that have considered the question and concluded that the SCA does not provide an express or implied private right of action. See e.g., Sopeña, 920 F. Supp. at 265 (noting that the SCA "does not create a private cause of action"); Danielsen v. Burnside-Ott Aviation Training Ctr., Inc., 941 F.2d 1220, 1227-29 (D.C. Cir. 1991) (concluding that "it is

plain that the SCA creates no private remedy"); Philco-Ford, 661 F.2d at 779 (noting that "[t]he Act does not specifically grant a private right of action, and nothing in its language or history compels [the court] to believe that such a right may be implied" rather "a plain reading of the statute evidences a clear legislative intent to restrict employee remedies under the Act to administrative channels"); Dist. Lodge No. 166, Intern. Ass'n of Machinists and Aerospace Workers, AFL-CIO v. TWA Servs., Inc., 731 F.2d 711, 715-16 (11th Cir. 1984) (relying on "[t]he Ninth Circuit's in-depth analysis of the SCA" in Philco-Ford to conclude "that plaintiff cannot maintain a private right of action under the SCA").

Ralton's alternative argument is that the Fair Labor Standards Act ("FLSA") "supplements" the SCA and, therefore, "allows for a private right of action in SCA claims." D. 8 at 9-10; D. 15 at 2. Specifically, she contends that: (1) "violations of primary federal wage and hour laws may be pursued by aggrieved employees in private lawsuits under the [FLSA]" and (2) that the FLSA and the SCA "supplement" each other such that employees may "bring private lawsuits on violations of federal wage and hour laws that fall under the SCA." D. 15 at 2. Ralton is correct that the SCA and the FLSA may be "mutually supplemental" and that courts have allowed certain FLSA claims to proceed despite the SCA's applicability. See Koren v. Martin Marietta Servs., Inc., 997 F. Supp. 196, 218 (D.P.R. 1998) (allowing FLSA claim for underpayment of overtime wages); Berry v. Andrews, 535 F. Supp. 1317, 1318 (M.D. Ala. 1982) (allowing FLSA claim for retaliatory discharge because plaintiff sought "relief that is clearly not available under the administrative provisions of the SCA"). Contrary to Ralton's argument, however, the FLSA does not create a private right of action under the SCA. See e.g., Koren, 997 F. Supp. at 210-11 (internal citations omitted) (noting only that although "the SCA provides no private cause of action to employees working under an SCA-governed contract . . . [t]he fact that

the FLSA provides a private remedy does not create a conflict with the SCA"). Rather, a plaintiff whose wages and benefits are established by the SCA may simply bring an FLSA claim to the extent the provisions at issue do not conflict. Lee v. Flightsafety Servs. Corp., 20 F.3d 428, 431 (11th Cir. 1994) (citation omitted).

Here, however, Ralton has not alleged a FLSA claim. See generally, D. 4. Nor are there any allegations in the complaint that would seem to support a FLSA claim. For example, Ralton makes no mention of any FLSA violation such as a failure to pay overtime wages, retaliatory discharge or discrimination. See 29 U.S.C. § 201 *et seq.* The cases Ralton relies upon in her opposition are, therefore, irrelevant as each involves a direct action under the FLSA.[1] See, e.g., Lee, 20 F.3d at 431 (holding that plaintiffs stated a claim under the FLSA and that there was no conflict with the SCA); Masters v. Maryland Mgmt. Co., 493 F.2d 1329, 1332-33 (4th Cir. 1974) (holding that the SCA did not affect computation of overtime wage rate under the FLSA); McDonald v. Eagle Express Lines, Inc., No. 09-cv-2039, 2009 WL 3147568, at *4 (N.D. Ill. Sept. 29, 2009) (holding that the plaintiff could proceed under the FLSA for unpaid overtime wages despite the SCA's coverage).

Ultimately, the Secretary of Labor has the exclusive right to enforce the SCA. Philco-Ford Corp., 661 F. 2d at 781 (noting that "Congress did not intend for private suits to enforce the [SCA], but rather established exclusive administrative enforcement by the Secretary of Labor").

---

[1] The Court notes that at the hearing, Ralton relied heavily on United States v. Deluxe Cleaners & Laundry, Inc., 511 F.2d 926 (4th Cir. 1975) to argue that a six-year statute of limitations should apply to her claim under the SCA. In Deluxe, however, the Fourth Circuit only considered whether a SCA action instituted by the Secretary of Labor (not a private action) was time barred. Id. In that case, the Secretary of Labor had prevailed in an administrative proceeding against the defendant. Id. at 927. After having difficulty recovering the award, the government instituted an action to do so and the Fourth Circuit allowed the government to pursue the action "subject only to the general period of limitation of six years prescribed by 28 U.S.C. § 2415." Id. at 929. As such, the Deluxe case also does not support Ralton's arguments that she has a timely private right of action under the SCA.

As such, "[t]he redress of plaintiffs' grievances lay with the Secretary and not in the courts." Id. Accordingly, the Court concludes that Ralton lacks the requisite standing to bring a SCA claim and ALLOWS Collecto's motion to dismiss as to Ralton's SCA claim.

### B. Ralton Has Not Sufficiently Alleged a Claim under Massachusetts Law

As noted above, Ralton also alleges that Collecto's "failure . . . to pay Ralton the required prevailing wages is a violation of . . . Massachusetts State Law." D. 4 ¶ 27. To begin, the court notes the difficulty in ascertaining the nature of Ralton's alleged state law claim. The bulk of Ralton's complaint traces the disparities between SCA-required wages and benefits and Ralton's actual compensation, D. 4 ¶¶ 5-21, 24-25. Moreover, the complaint does not specify any particular state law or cite to any Massachusetts statute. See generally, D. 4.

In the face of this uncertainty, Collecto initially assumed that Ralton had intended to allege a Massachusetts Wage Act ("Wage Act") claim pursuant to Mass. Gen. L. c. 149, § 148, and argued in its initial briefing that a Wage Act claim would be time-barred since Ralton has exceeded the three-year statute of limitations.[2] D. 6 at 6-7. At the motion hearing and in her reply papers, however, Ralton argued that she had intended to allege a breach of contract claim. See D. 8 at 11 (arguing that "the Plaintiff [] couched her claim much differently" and "is absolutely entitled to maintain a Breach of Contract Claim against the Defendant for unpaid wages"). Assuming that this was Ralton's intent, the Court concludes that the complaint does not sufficiently allege a breach of contract claim.

As an initial matter, the Court notes that the only contracts mentioned in the complaint are the two debt collection services contracts between Collecto and the DOE. D. 4 ¶¶ 3, 18, 24.

---

[2]To the extent that Ralton has alleged a Wage Act claim, the Court notes that it would be time-barred as Ralton has exceeded the three-year statute of limitations. Mass. Gen. L. c. 149, § 150.

To the extent that Ralton seeks to recover unpaid wages as a third party beneficiary to Collecto's contract with the federal government, the Court construes such a claim as a private SCA action for which Ralton lacks standing. See Miccoli v. Ray Commc'ns., Inc., No. 99-cv-3825, 2000 WL 1006937, at *2-3 & n.5 (E. D. Pa. July 20, 2000) (noting that plaintiff's third party beneficiary claim, "no matter how creative the choice of nomenclature, [was] in reality a private claim for back wages under the [] [SCA]" and concluding that the SCA does not allow for such a claim because it provides "an exclusive administrative mechanism for [its] enforcement"); Oji v. PSC Envt'l Mgmt. Inc., 771 F. Supp. 232, 234 (N.D. Ill. 1991) (finding that "although not explicitly labeled as such," plaintiff's complaint presented a claim for breach of contract under the SCA and was barred for lack of standing because "the SCA neither explicitly nor implicitly authorizes a private cause of action"); Johnson v. Prospect Waterproofing Co., 813 F. Supp. 2d 4, 9 (D.D.C. 2011) (concluding that "plaintiffs cannot get around the administrative prerequisites of the [Davis-Bacon] Act simply by dressing up their claim in new language and asserting that it arises under state law").

Finally, the Court notes that in its briefing Collecto relied on Mansfield v. Pitney Bowes, Inc., No. 12–cv-10131–DJC, 2013 WL 947191 (D. Mass. Mar. 12, 2013) and Lipsitt v. Plaud, 466 Mass. 240 (2013) to argue that Ralton's alleged contract claim, or quasi-contract claim, is preempted under Massachusetts law. D. 9-1 at 4-5. In Mansfield, this Court identified two scenarios under Massachusetts law where a statute preempts common law remedies. 2013 WL 947191, at *2. "The first scenario occurs when the legislature in the enactment of a statute indicates that the 'enactment was intended to restrict previously existing common law remedies.'" Id. (quoting Sch. Comm. of Bos. v. Reilly, 362 Mass. 334, 338-39 (1972)). "The second scenario occurs when the legislature creates a new right or duty that 'is wholly the

7

creature of statute [and] does not exist at common law.'" Id. (alteration in original) (quoting Reilly, 362 Mass. at 338). Although, in Mansfield, this Court only considered whether common law remedies were preempted by state statutory provisions, in Lipsitt, the Supreme Judicial Court seemed to suggest that a similar reasoning would apply to, at least, the second scenario described in Mansfield. Lipsitt, 466 Mass. at 247 n.11 (noting "that a plaintiff should not be allowed to circumvent procedural or other requirements imposed by a particular statute by pleading a common-law cause of action that asserts a right created under that statute and not previously recognized at common law" and citing Anderson v. Sara Lee Corp., 508 F.3d 181, 192–195 (4th Cir. 2007) for the proposition that the FLSA would preempt state law claims for breach of contract that depended on proving a FLSA violation).

Here, Ralton's alleged contract claim appears to be based on the purely statutory obligation to pay prevailing wages – an obligation that did not previously exist at common law (the "second scenario" under Mansfield) – and, as such, would be preempted under Massachusetts law. See Mansfield, 2013 WL 947191, at *2. In response, Ralton argues only that a common law claim for breach of contract is not necessarily preempted because "there is no indication of legislative intent to preempt the common law." D. 15 at 6-8. To be sure, this Court has acknowledged a "third scenario" where "a statutory remedy is created in a manner that is compatible with an existing common law remedy," Mansfield, 2013 WL 947191, at *2; see also Lipsitt, 466 Mass. at 244-52 (holding that the Wage Act does not preempt common law claims for breach of contract where the plaintiffs claims "do not depend on proving a violation of some statutorily created right"); Eyssi v. City of Lawrence, 416 Mass. 194, 200 (1993) (quoting Riley v. Davison Constr. Co., 381 Mass. 432, 438 (1980) (alteration in original) (noting that "[a] statute is not to be interpreted as effecting a material change in or a repeal of the common law

8

unless the intent to do so is clearly expressed"), however, here, Ralton's claims are based solely on Collecto's alleged failure to pay the prevailing wage under the SCA. D. 4 ¶ 27; see also, Ralton Hearing Draft Transcript 12/3/2014 at 5 (acknowledging that Ralton's breach of contract claim was the "[f]ailure to pay the prevailing wage" under "federal Department of Education contracts"). As such, "there is no common law remedy to supplant," Mansfield, 2013 WL 947191, at *2 (citations omitted), and to the extent that Ralton has alleged breach of contract claim, it is preempted.

Accordingly, the Court concludes that Ralton has not sufficiently alleged a violation of "Massachusetts State Law," D. 4 ¶ 27.

**VI. Conclusion**

For the foregoing reasons, the Court ALLOWS Collecto's motion to dismiss, D. 5.[3]

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[3] Ralton has not made a formal motion to amend her complaint. To the extent Ralton seeks leave to amend her state law claim, see D. 8 at 14, the Court denies the request. Having dismissed Ralton's federal claim, the Court would no longer have jurisdiction over a non-diverse, state law action. Furthermore, to the extent that Ralton seeks remand of a state law claim, id. at 15, the Court notes, as discussed in detail above, that Ralton's complaint did not state any violation of a specific state law. Having considered Ralton's potential contract action, based entirely on Collecto's obligations under the SCA, the Court determines that no such action exists. There is, therefore, nothing further for a state court to consider, and remand is neither warranted nor necessary. See Senra v. Town of Smithfield, 715 F.3d 34, 41 (1st Cir. 2013) (citations omitted) (noting that, in the interests of judicial economy, convenience, comity and fairness, a federal court may, instead of remanding the case to state court, exercise supplemental jurisdiction over an alleged state claim even after dismissing the foundational federal claim).